Citation Nr: 1554505 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 13-25 986 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia


THE ISSUES

1. Entitlement to service connection for flat feet.

2. Entitlement to service connection for Parkinson's disease.

3. Entitlement to service connection for a liver disability.

4. Entitlement to service connection for a left knee disability.

5. Entitlement to service connection for a left leg disability.

6. Entitlement to service connection for a bilateral ankle disability.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

James R. Siegel, Counsel


INTRODUCTION

The appellant is a Veteran who served on active duty from October 1975 until his retirement in September 1995. These matters are before the Board of Veterans' Appeals (Board) on appeal from a November 2010 rating decision of the Huntington, West Virginia Department of Veterans Affairs (VA) Regional Office (RO). In June 2014 a videoconference hearing was held before the undersigned; a transcript is in the record. In May 2015, the Board remanded the claims for additional development of the record.

An appeal in the matter of service connection for a left shoulder disability was also remanded by the Board in May 2015. An August 2015 rating decision granted service connection for a left shoulder rotator cuff tear, resolving that matter. 


FINDINGS OF FACT

1. The Veteran is not shown to have flat feet.

2. The preponderance of the evidence is against a finding that the Veteran has Parkinson's disease.

3. A liver cyst was not manifested in service, and the preponderance of the evidence is against a finding that the Veteran's liver cyst is related to his service.
4. A left knee disability was not manifested in service, and the preponderance of the evidence is against a finding that such disability is related to the Veteran's service.

5. The Veteran is not shown to have a left leg disability.

6. The Veteran is not shown not have a disability of either ankle.


CONCLUSIONS OF LAW

1. Service connection for flat feet is not warranted. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. § 3.303 (2015).

2. Service connection for Parkinson's disease is not warranted. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. § 3.303 (2015).

3. Service connection for a liver disability is not warranted. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. § 3.303 (2015).

4. Service connection for a left knee disability is not warranted. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. § 3.303 (2015).

5. Service connection for a left leg disability is not warranted. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. § 3.303 (2015).

6. Service connection for a bilateral ankle disability is not warranted. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. § 3.303 (2015).






REASONS AND BASES FOR FINDINGS AND CONCLUSION

Veterans Claims Assistance Act (VCAA)

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). By correspondence dated in April and May 2010, VA notified the Veteran of the information needed to substantiate and complete his claims, to include notice of the information that he was responsible for providing, the evidence VA would attempt to obtain, and how VA assigns disability ratings and effective dates of awards. It is not alleged that notice was less than adequate.

The Veteran's service treatment records (STRs) are associated with the record and pertinent VA and private medical records have been secured. He has not been afforded a VA examination in connection with the claims of service connection for left leg and bilateral ankles disabilities. As there is no evidence demonstrating that the Veteran might have such disorders, the low threshold standard for determining when an examination an examination is necessary is not met (see McLendon v. Nicholson, 20 Vet.App. 79 (2006)), and an examination to secure a medical opinion in these matters is not necessary. The Veteran has not identified any pertinent evidence that remains outstanding. VA's duty to assist is met. 

Factual Background, Legal criteria and Analysis 

The Board has reviewed all of the evidence in the Veteran's record. Although the Board is required to provide reasons and bases supporting its decision, there is no need to discuss each item of evidence in the record. Hence, the Board will summarize the pertinent evidence as deemed appropriate, and the Board's analysis will focus specifically on what the evidence of record shows, or does not show, with respect to the claims. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000).

In September 1975, prior to the Veteran's entrance into service, a private physician wrote that the Veteran sustained a deep laceration of the left knee going to the knee joint in April of that year. When he was seen in September 1975, the examiner stated he felt the Veteran did not have any disability. 

The Veteran's STRs show that in a September 1975 report of medical history (on service entrance), he reported a football injury to the left knee, and that he had an operation to clean a deep left knee laceration. He denied having a "trick" or locked knee. In April 1978 he had a muscle strain of the left gluteus maximus. He complained of knee and ankle pain of three weeks duration in April 1980. He described a dull, throbbing pain in the right ankle and left knee. X-rays of the left knee and right ankle found no significant abnormality. The assessment was loose ligament/tendons. Exercises were recommended. He complained of "right" heel pain in March 1990. He reported he felt pain in the bottom of his left foot medially while running one week earlier. Examination of the left foot noted pain on palpation along the bottom of the foot from the ball of the foot to the beginning of the calcaneus. The assessment was probable fasciitis. Medication and rest were prescribed. In February 1995, the Veteran requested a profile for left knee pain which worsened with cold weather. Examination found decreased range of motion. There was no effusion. The assessment was left knee osteoarthritis. An undated report shows that members of a specified unit were involved in an epidemic of antomeba histolytica in April 1991. A sample number of soldiers was tested and found positive by stool sample. The brigade was treated with Flagyl and another medication. It was noted that individual records were not made unless there were problems with treatment or severe illness. 

A July 1995 report of medical history notes the Veteran reported left knee arthritis He denied foot trouble, a "trick" or locked knee and liver trouble. The physician's summary noted the Veteran had occasional left knee discomfort. The abdomen and viscera, lower extremities and feet and a neurological evaluation were normal on the July 1995 retirement examination. 

Private medical records show that magnetic resonance imaging (MRI) in November 2009 (for reports of tremors, migraine and vision loss) led to a conclusion that the most likely etiology for the complaints was chronic small vessel ischemic changes. It was noted that changes related to a previous migraine headache might produce a similar appearance. The following month it was noted that he had a coarse tremor in the right upper extremity. 

On August 2010 VA Persian Gulf examination, the Veteran reported he developed a severe tremor in 2003 that had progressed since 2005. The tremor was primarily located in the right upper extremity. He stated he was being treated by a private physician who diagnosed Parkinsonism. It was also postulated that the symptoms were due to cervical canal stenosis. On systems review, the Veteran denied gastrointestinal or foot symptoms. Examination found the liver was normal and there was no evidence of flat feet. The diagnosis was Parkinson's disease. 

On August 2010 VA joints examination, the Veteran reported that twice during service he was seen for left knee pain, and orthopedic evaluations and X-rays were normal. X-rays of the left knee in August 2010 were also normal. The diagnosis was normal left knee. In an October 2010 addendum, the August 2010 examiner stated that Parkinson's is a chronic multisystem illness with a clear and specific etiology which was probably secondary to a severe head injury prior to service. 

On July 2015 VA neurology examination, the examiner noted he reviewed the Veteran's records, and found no definitive diagnosis of Parkinson's disease. He indicated the Veteran had been symptomatic since 1996/1997 and was treated with various Parkinson's drugs with no improvement. He added the Veteran had Parkinson-like symptoms of micrographia and in the past had had bradykinesia. He had not been on medication for Parkinson's since 2006. The examiner observed that the fact that the Veteran had not worsened suggested that he did not have Parkinson's disease. 

On July 2015 VA knee examination, the diagnosis was "right" knee strain. The Veteran reported that he was in a motorcycle accident in 1975 and sustained a deep left knee laceration; he was also told he had a stretched medial collateral ligament. Thereafter he had left knee pain with running. It was noted that he had gained 70 pounds from 1975 to the present. The examiner stated the Veteran had normal knee X-rays in 2010, indicating he did not have traumatic arthritis from the 1995 motorcycle accident. It was noted that for 20 years after service the Veteran was able to work in an industry that required walking. The examiner opined that obesity was the major cause of the Veteran's left knee pain. 

On July 2015 VA liver examination, the Veteran reported that during service he was treated with Flagyl after being exposed to the organism entamoeba histolytica. The examiner stated this can cause amebiasis, symptoms of which include bloody diarrhea and abscesses of the liver. He noted that liver abscesses can cause nausea, vomiting, fever, sweating, weight loss and jaundice. He observed that the Veteran did not experience such symptoms, and that Flagyl is used to treat amebiasis and does not cause such symptoms. It was noted that the Veteran apparently had right lower posterior lateral chest area pain and that a CT scan had revealed a liver cyst. He was told that it could possibly be due to exposure to entamoeba histolytica. The examiner noted that the Veteran was asymptomatic and had no symptoms related to this gastrointestinal tract or liver, and that laboratory studies of the liver had always been normal. The examiner concluded the Veteran had no documented symptoms of amebiasis or of an amebic abscess. The only finding is a liver cyst and 9.7 percent of the male population over 40 has one. It was improbable that without symptoms of nausea, vomiting, fever, sweating, weight loss and jaundice (none of which the veteran had) what was seen on CT scan of the abdomen was a residual of an amoebic abscess. He did complain of right lateral side pain and described an area of pain about the size of a quarter in his rib cage area. He did not have abdomen pain with palpation. He had served from 1991 (when he took the Flagyl) to 1995 (when he separated) with no complaints of pain in the abdomen or over the liver. The examiner stated there is no scientific evidence of Flagyl causing a liver cyst. In August 2015 the examiner opined that the Veteran's liver condition is unrelated to his service. He noted that the Veteran had no symptoms indicative of a liver abscess from amebiasis documented in his service treatment records. 

An August 2015 addendum notes that the VA examiner concluded the Veteran did not have a diagnosis of Parkinson's disease. He had some symptoms that overlapped with Parkinson's disease, but had had them since 1997 and overt Parkinson's would have developed in this period of time if the disease process were truly Parkinson's. The examiner opined the Veteran most likely had an essential tremor. 

In August 2015, the VA examiner who examined the Veteran for his knee in July 2015 opined that it was less likely as not that a left knee disability was caused by or a result of service. He noted the Veteran did not have evidence of ligament laxity on the July 2015 examination, and reiterated that obesity was the major cause of the Veteran's left knee pain. He observed that there is no evidence of continuing knee care from 1995 to 2010. 

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Establishing service connection generally requires evidence of: (1) a current disability (for which service connection is sought); (2) incurrence or aggravation of a disease or injury in service; and (3) a nexus between the claimed disability and the disease or injury in service. See Shedden v, Principi, 381 F.3d 1153, 1166-1167 (Fed. Cir. 2004).

 Liver disease 

During the June 2014 hearing before the undersigned the Veteran testified that his entire unit was given Flagyl after consuming contaminated food. He related that he was told this might result in liver damage. He related he had right side pain during service, but did not report it, and was later found to have a lesion on his liver. There is no indication in the STRs of symptoms or findings relating to liver disease. The abdomen was normal on the July 1995 retirement examination. Furthermore, when the Veteran was examined by VA in August 2010, the liver was normal. He reported he was treated with Flagyl upon being exposed to an organism that can cause amebiasis. But a VA examiner has stated there is no scientific evidence that Flagyl causes a liver cyst, and concluded that the Veteran's liver cyst is unrelated to his service. 

The Veteran's assertion that the liver cyst of his liver is due to his being given Flagyl during service is not competent evidence in this matter. Laypersons are competent to provide opinions on some medical issues. However, the etiology of a liver cyst noted many years after service, and with no credible evidence of continuity of symptoms between discharge from service and the initial postservice notation of the cyst, is a question outside the scope of common knowledge. See Kahana v. Shinseki, 24 Vet. App. 428 (2011); see Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). 

The preponderance of the evidence of record shows that the Veteran's current liver pathology became manifest many years after, and is not shown to be related to, his service. Accordingly, the preponderance of the evidence is against this claim of service connection for liver disease.

 Left knee 

The record shows the Veteran sustained a deep laceration of the left knee in April 1975 (prior to service). His private physician noted in September 1975 (the month he entered service) that there was no left knee disability at that time. The Veteran twice reported left knee pain in service; X-rays in April 1980 were normal. In February 1995 the Veteran was found to have limitation of left knee motion, and it was reported he had osteoarthritis in that knee. There is no indication in the STRs that X-rays showed left knee arthritis. On March 1995 service retirement examination it was noted that the Veteran reported occasional left knee discomfort, but clinical examination was normal. 

An August 2010 VA examination found no left knee abnormality; X-rays were normal. On July 2015 examination the examiner observed that left knee X-rays in 2010 were normal, and thus the Veteran did not have arthritis in the knee at that time. He further observed that the Veteran had a significant gain in weight and concluded that was the major factor for his left knee pain. In August 2015 the examiner opined that it was less likely as not that the Veteran's left knee condition is related to service. He noted there was no evidence of continuing treatment for left knee complaints following service. The Board notes that by May 2015 letter the Veteran was advised to submit evidence of postservice knee treatment, but no such evidence was received. 
The Veteran's assertion that he has a left knee disability sustained in service is not competent evidence in this matter. Laypersons are competent to provide opinions on some medical issues. However, the etiology of a left knee disability where there is no credible evidence of continuity of symptoms between discharge from service and the initial postservice notation of any left knee symptoms, particularly with normal intervening examinations, falls outside the realm of common knowledge. See Kahana v. Shinseki, 24 Vet. App. 428 (2011); see Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). 

In summary, the preponderance of the evidence of record establishes that the Veteran's current left knee disability became manifest after, and is not shown to be related to, his service. Accordingly, the preponderance of the evidence is against the claim for service connection for a left knee disability.

 Flat feet, Parkinson's disease, left leg and bilateral ankle disabilities 

The Veteran's STRs show that he was seen for: a left leg strain in April 1978, bilateral ankle pain in April 1980, and heel pain in March 1990. There is no indication that during service he sought treatment for complaints associated with Parkinson's. 

On August 2010 VA examination, the Veteran stated he first had a tremor in 2003. It was noted that he was being treated by a private physician (who had diagnosed Parkinsonism). In July 2015, a VA physician who reviewed the Veteran's record concluded that the Veteran did not have Parkinson's disease. He referred to the fact that the Veteran's symptoms had not worsened as supporting the conclusion that he did not have Parkinson's disease. The next month he reiterated the opinion that the Veteran did not have Parkinson's and instead had an essential tremor. On longitudinal review of the record the Board finds that the preponderance of the evidence is against a finding that the Veteran has (or during the pendency of the claim has had) Parkinson's disease. Instead, what the record shows is that the Veteran apparently had symptoms that may be associated with Parkinson's and received treatment for the symptoms in the form of medication that is prescribed for Parkinson's. However, the symptoms were not relieved with the medication, and the medication was discontinued. The Board finds persuasive the July 2015 VA examiner's opinion indicating (in essence) that the Veteran did not have Parkinson's, citing in support that if he had had such disease, by now it would have progressed to an "overt" (i..e., diagnosis not in dispute) state, which has not occurred. There is no competent (medical opinion) evidence to the contrary. The Board acknowledges that a prior VA examiner apparently attributed the Veteran's condition to a pre-service head injury which the Veteran maintains had not occurred (and also acknowledges that there is no evidence of such head injury). However, the critical and dispositive fact in this case is that the Veteran is not shown to have a diagnosis of Parkinson's disease (the disability for which service connection is sought). 

Regarding the remaining claims, it was specifically noted on July 2010 VA examination that the Veteran did not have flat feet. Likewise, there is no objective evidence that following service the Veteran has a disability of the left leg or of either ankle. 

In summary, there is no clinical evidence in the record demonstrating that the Veteran has flat feet, Parkinson's disease, a left leg disability or a disability of either ankle. Hence, he has not presented a valid claim of service connection for such disabilities. See Brammer v. Derwinski, 3 Vet. App. 223 (1992). Accordingly, his appeals in these matters must be denied.


ORDER

The appeals seeking service connection for flat feet, Parkinson's disease, a liver disability, a left knee disability, a left leg disability and right and left ankle disabilities are denied.


____________________________________________
GEORGE R. SENYK
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs