Citation Nr: 1725274 
Decision Date: 06/28/17 Archive Date: 07/18/17

DOCKET NO. 12-27 051A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUE

Entitlement to service connection for a cervical spine disability.


ATTORNEY FOR THE BOARD

M. Young, Counsel


INTRODUCTION

The Veteran had active military service from July 1969 to September 1973. 

This matter comes to the Board of Veterans' Appeals (Board/BVA) from a July 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO). In January 2014 the Board remanded this matter for additional development. In a November 2016 letter, the Veteran's attorney withdrew representation. The Veteran is not represented by a Veterans' service organization or attorney at this time. 
FINDING OF FACT

A cervical spine disability was not manifested in service or for many years thereafter; arthritis was not manifested in the first postservice year; a cervical spine disability is not shown to be related to the Veteran's service.


CONCLUSION OF LAW

Service connection for a cervical spine disability is not warranted. 38 U.S.C.A. §§ 1110, 1112, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

The requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met. By correspondence dated in June 2010, VA notified the Veteran of the information needed to substantiate and complete his claim, to include notice of the information that he was responsible for providing, the evidence VA would attempt to obtain, and how VA assigns disability ratings and effective dates of awards. He has had ample opportunity to respond/supplement the record, and has not alleged that notice was less than adequate.

The Veteran's service treatment records (STRs) and pertinent postservice treatment records are associated with the record. Social Security Administration records have been associated with the record. The Veteran was afforded a VA examination in November 2016 pursuant to the Board's January 2014 remand. The Board finds that the report of the examination is adequate for rating purposes. See Barr v. Nicholson, 21 Vet. App. 303 (2007). As such, the Board finds that there has been substantial compliance with the January 2014 Board remand. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where there was substantial compliance with the Board's remand instructions). The Board further finds that the record as it stands includes adequate competent evidence to allow the Board to decide this matter, and that no further development of the evidentiary record is necessary. See generally 38 C.F.R. § 3.159 (c)(4). The Veteran has not identified any pertinent evidence that remains outstanding. VA's duty to assist is met.

Legal Criteria, Factual Background, and Analysis

Service connection may be granted for disability due to disease or injury incurred in or aggravated by military service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Service connection may be granted for any disease initially diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

To substantiate a claim of service connection, there must be evidence of: a current claimed disability; incurrence or aggravation of a disease or injury in service; and a nexus between the disease or injury in service and the current disability. See Shedden v. Principi, 381 F.3d 1153, 1166-67 (Fed. Cir. 2004). The determination as to whether these requirements are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. Baldwin v. West, 13 Vet. App. 1 (1999); 38 C.F.R. § 3.303(a).

Certain chronic diseases, to include arthritis, may be presumed to be service connected if manifested to a compensable degree within a specified period of time following discharge from active duty (one year for arthritis). 38 U.S.C.A. § 1112; 38 C.F.R. §§ 3.307, 3.309. A nexus to service may be established by showing continuity of symptomatology since service. See Walker v. Shinseki, 708 F.3d 1331, 1338-40 (Fed. Cir. 2013).

Lay evidence may be competent evidence to establish incurrence. See Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (e.g., a broken leg), (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Laypersons are competent to provide opinions on some medical issues. See Kahana v. Shinseki, 24 Vet. App. 428 (2011). However, competent medical evidence is necessary where the determinative question is one requiring medical knowledge. See Jandreau v. Nicholson, 492 F.3d 1372 Fed. Cir. 2007).

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

The Board notes that it has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting its decision, there is no requirement that the Board discuss every piece of evidence in the record. Rather, the Board will summarize the relevant evidence, as deemed appropriate, and the analysis will focus specifically on what the evidence shows, or fails to show, as to the claim. See Gonzalez v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000).

The Veteran essentially contends that his current claimed cervical spine disability is related to an incident that occurred during active service when he was involved in a fight/altercation in 1970 and endured a severe beating by six men. A September 1970 STR records that the Veteran was seen (at an in service medical facility) with complaints of a left eye contusion, abrasions of the right elbow, right knee and right shoulder, bloody nose, and sore right thumb after a fight that night. There is no record of injury to his neck/cervical spine. STRs are silent for any complaints, treatment or diagnosis of a cervical spine injury or disability. His September 1973 medical examination report at separation from active duty shows no abnormalities of the neck, cervical spine or other musculoskeletal on clinical evaluation. He indication on the Report of Medical History at separation that he did not have or had ever had any swollen or painful joints, bone, joint, or other deformity. 

On July 1976 VA examination, the Veteran reported that while he was in Vietnam he was beaten by several people - bruising his face and injuring his chest. He did not specify any neck or cervical spine symptoms or consequent impairment and the examiner did not note any such abnormalities involving the neck or cervical spine. He also noted that he injured his heels when a tractor wheel went over them in 1972. He did not report injury to his neck/cervical spine at that time. On physical examination his neck was normal. His musculoskeletal system was normal. There were no deformities or dysfunctions noted. VA outpatient treatment record from November 1996 to July 1997 note no diagnosis or treatment for a neck/cervical spine disability. 

A September 2000 VA outpatient treatment record shows an assessment of neck pain with radiculopathy. X-rays of the cervical spine in September 2000 showed normal vertebral body heights and alignment. There was minor spurring at the anterior margins of the vertebral bodies of C5-6 and some uncovertebral spurring at C5-6 causing slight left neural foraminal encroachment. The study was otherwise normal. 

An October 2000 MRI [magnetic resonance imaging] of the cervical spine shows mild to moderate cervical spondylosis with posterior endplate spurring at C5-6 and C6-C6 [sic] producing some encroachment on the canal and a tiny left paracentral disc protrusion superimposed upon the spondylosis at C4-C5. A June 2001 VA outpatient clinic note shows an assessment of cervical radiculopathy, multilevel disc disease most marked at levels C4-5, C5-6, and C6 - with prominent osteophyte and disc protrusion causing some foraminal narrowing and mild cord indentions. A September 2001 VA outpatient treatment note shows a diagnosis of neck pain. During a February 2004 VA pain clinic visit, the Veteran report having myofascial blocks of his posterior neck and upper trunk in November 2003. The assessments were significant improvement in myofascial pain, and the right greater occipital nerve seemed to be improved from November 2003, but there were still signs of entrapment neuritis. 

A January 2005 VA outpatient treatment report shows an impression of a history of chronic neck pain. A July 2005 MRI shows severe acquired spinal canal stenosis most prominently at the level of C5-C6 and C6-C7 secondary to broad-based disk bulge, right paracentral disk protrusion at level C3-C4 and C4-C5 resulting in moderate neural foraminal narrowing on the right; and moderate to severe degenerative arthritic changes of the cervical spine. X-rays of the cervical spine in July 2010 show no acute findings of the cervical spine. Long segment anterior plate and screw fusion of the cervical spine revealed unremarkable alignment.

On a November 2016 VA (fee basis) neck (cervical spine) conditions Disability Benefits Questionnaire/examination, the Veteran reported that the date of onset of his cervical spine disability symptoms was 1970; he was "Beat up by 6 guys" in 1970; and he fell off a jet and hit cement in 1971. He stated that VA put him in pain management with shots in the neck and back every 6 weeks. Following physical examination of the Veteran, the examiner diagnosed cervical spondylosis status post anterior fusion. The examiner opined that the Veteran's cervical spine disability was less likely than not (less than 50 percent probability) incurred in or caused by the claimed inservice injury, event, or illness. The rationale for the opinion was that there was no indication of any cervical spine condition until evaluation with MRI in 2000. Review of records evaluating the Veteran after the reported fight in 1970 also showed no indication of a cervical spine injury or of any evaluation for continued symptoms after initial evaluation. The Veteran reported he worked in a variety of jobs after discharge from service that all included physically strenuous job duties including police, fireman, security, welding, and working at horse stables, any or all of which could have contributed to his cervical spine disability. The examiner noted that based on extensive record review, current findings and the course of the Veteran's cervical spine condition, the claimed disability was less likely than not incurred in or caused by the claimed inservice injury, event, or illness. 

It is not in dispute that the Veteran has a cervical spine disability, as a July 2005 MRI shows moderate to severe degenerative arthritic changes of the cervical spine and the recent November 2016 VA examination shows a diagnosis of cervical spondylosis status post anterior fusion. However, a cervical spine disability was not manifested in service as the Veteran's STRs are silent for complaints, treatment, or diagnosis of a cervical spine disability. Consequently, service connection for a cervical spine disability on the basis that it became manifest in service is not warranted. Additionally, as cervical spine arthritis is not shown to have been manifested in the first postservice year, the chronic disease presumptive provisions of 38 U.S.C.A. § 1112; 38 C.F.R. §§ 3.307, 3.309 do not apply.

In the absence of credible evidence of continuity of complaints or treatment since an injury in service, whether a chronic disease (such as cervical spine arthritis) may be related to a remote injury in service is a medical question that requires medical expertise. The Veteran asserts that his neck/cervical spine was injured in service when he was beaten with rubber hoses and night sticks by 6 soldiers. The Veteran is a layperson, and has not demonstrated or alleged expertise in determining the etiology of the chronic disease. He has not provided any supporting medical opinion or medical treatise evidence; does not cite to any supporting factual data; and does not offer any explanation of rationale for his opinion. Therefore, his opinion in this matter lacks probative value. The service medical examination report and treatment records and postservice treatment records provide evidence against the Veteran's claim, as there is no documented treatment in service for injury to the neck/cervical spine, or for many years after service. The earliest postservice complaints regarding the Veteran's neck/cervical spine disability was in 2000, roughly 27 years after he separated from service. This lengthy interval between service and the initial postservice notation of a neck/cervical spine disability on the basis that it began in service and persisted is not warranted. 

What remains for consideration is whether the Veteran's cervical spine disability may otherwise be related to his service. Here, the November 2016 VA medical opinion of record provides probative evidence against the Veteran's claim, and the Board finds the opinion persuasive. The examiner reviewed the record, considered the Veteran's lay assertions regarding injuries in service, and supported the opinion with a rationale that cites to supporting factual data (to include the lengthy postservice intervening period before the claimed cervical spine disability was shown and that there are nonservice-related etiological factors for the Veteran's disability, which include physically strenuous postservice job duties). The examiner is a medical professional with subject matter expertise. 

In summary, as there is no probative evidence that shows or suggests that the Veteran's cervical spine disability may be related to his service, the preponderance of the evidence is against this claim. Therefore, the benefit of the doubt rule does not apply. Gilbert, 1 Vet. App. at 55. The appeal in this matter must be denied.


ORDER

Service connection for a cervical spine disability is denied.




____________________________________________
A. C. MACKENZIE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs