leged infringer to respond in one action to all claims of infringement for his act." *Independent Wireless Co.*, 269 U.S. at 468, 46 S.Ct. at 169.

■ A licensee cannot stand by until a patentee's suit is concluded and then seek to vindicate its rights in a second suit. As stated in *Birdsell v. Shaliol*, 112 U.S. 485, 486–87, 5 S.Ct. 244, 245, 28 L.Ed. 768 (1884):

> [W]hen a suit ... has been brought and prosecuted, in the name of the patentee alone, with the licensee's consent and concurrence, to final judgment from which, if for too small a sum, an appeal might have been taken in the name of the patentee, we should hesitate to say merely because the licensee was not a formal plaintiff in that suit, that a new suit could be brought to recover damages against the same defendant for the same infringement.

While Ortho sought to become part of Amgen's suit at trial, on appeal Ortho seeks approval of an independent second suit in the name of Amgen against the same infringer for the same acts of infringement, namely, Genetics use of the patented '008 technology in the United States, which was the subject of Amgen's suit. Ortho does not claim it was a necessary or indispensable party to Amgen's suit, did not appeal the denials of intervention therein, and did not appeal the order deconsolidating this suit from Amgen's. Moreover, the parties advised the court at the hearing that the Amgen/Genetics litigation has been settled. Thus, Ortho has effectively consented and concurred to suit in the name of the patentee alone.

## IV.

### CONCLUSION

For the foregoing reasons, the judgment is *AFFIRMED*.

Herbert L. EISELSTEIN, Jerry A. Harris, Darrell F. Smith, Jr., Edward F. Clatworthy, Stephen Floreen and Jeffrey M. Davidson, Appellants,

v.

Richard B. FRANK, Terry A. Debold, Sunil Widge and James W. Martin, Appellees.

No. 94–1374.

United States Court of Appeals, Federal Circuit.

April 11, 1995.

Francis J. Mulligan, Jr., Inco Patents and Licensing, Saddle Brook, NJ, argued for appellants.

Francis A. Paintin, Woodcock Washburn Kurtz MacKiewica & Norris, Philadelphia, PA, argued for appellees.

Nancy J. Linck, Sol., Albin F. Drost, Deputy Sol. and Richard E. Schafer, Acting Associate Sol., Arlington, VA, were on the brief for amicus curiae, Comm'r of Patents and Trademarks.

Before PLAGER, LOURIE, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

Herbert L. Eiselstein *et al.* appeal from a decision of the Board of Patent Appeals and Interferences in interference number 102,-601, holding claims 1–19 of United States Patent 4,788,036 unpatentable under 35 U.S.C. § 102(b). Because the Board properly denied Eiselstein *et al.* the benefit of an earlier application's filing date under 35 U.S.C. § 120 with respect to claims 1–7 and 19, but erred in denying Eiselstein *et al.* the benefit of that filing date with respect to claims 8–18, we affirm in part and reverse in part.

## BACKGROUND

This appeal involves an interference between United States Patent 4,788,036, naming Appellants (collectively "Eiselstein") as inventors, and United States patent application serial number 869,138, naming Appellees (collectively "Frank") as inventors. The Eiselstein patent issued on November 29, 1988 from application serial number 914,137, filed October 1, 1986 (the "Eiselstein application"). The Eiselstein application was a continuation-in-part of application serial number 566,-601 (the "parent application"), filed December 29, 1983, which in turn was a continuation-in-part of application serial number 255,-158 (the "grandparent application"), filed April 17, 1981. Eiselstein is also the named inventor on European Application 066361 (EP'361), published December 8, 1982, which corresponds substantially to the grandparent application. Frank was designated the senior party in the interference based upon the earlier May 30, 1986 filing date of his application.

The subject matter in interference is a nickel-based alloy having high strength, ductility, and resistance to corrosion. The alloy may be used for, *inter alia,* production of tubing and associated hardware for deep sour gas and oil well applications. The dis-

pute centers on the nickel content of the claimed alloy. Count 1, the sole count, reads:

> A nickel-base alloy consisting essentially of, in weight percent, about 15 to 25% chromium, up to about 20% iron, about 6.5 to 12% molybdenum, about 2 to 6% columbium, from 0.5 to 2.5% titanium, up to about 1% aluminum and *the balance nickel with nickel being at least about 50% of the alloy* [emphasis added].[1]

Two representative claims of the Eiselstein patent read as follows:

> 1. A nickel-base alloy ... said alloy consisting essentially of, in weight percent, about 15 to 25% chromium, about 5 to about 15% iron, about 6.5 to 9% molybdenum, about 2.5 to 5% columbium, from 0.5 to 2.5% titanium with the proviso that when the titanium is less than 1% the columbium is at least 3.5%, up to about 0.5% aluminum and *the balance nickel with nickel constituting about 50 to about 60% of the alloy* [emphasis added].

> 15. A nickel-chromium-iron base alloy ... said alloy consisting essentially of from 15% to about 25% chromium, about 5% to about 15% iron, about 6.5% to 9% molybdenum, about 2.5 to 5% columbium, from 0.5 to 2.5% titanium, with the proviso that when the titanium is below 1% the columbium is at least 3.5%, up to about 0.5% aluminum and *the balance nickel, the nickel being from about 45% to about 55% of said alloy* [emphasis added].

Claim 1 is representative of claims 1–7 and 19. Claim 15 is representative of claims 8–18.

In the interference, the Examiner–In–Chief (EIC) held that Eiselstein's claims 1–7 and 19 were anticipated by EP'361 and hence were unpatentable under § 102(b). In so holding, the EIC denied Eiselstein's claim under § 120 for benefit of the grandparent application's filing date. The EIC determined that the grandparent did not satisfy the written description requirement of 35 U.S.C. § 112 for claims 1–7 and 19 because it

described a nickel content of 45 to 55% weight percent, not about 50 to about 60%, as required by those claims.

The Board upheld this determination and further held that Eiselstein's claims 8–18 were also unpatentable under § 102(b). The Board determined that, because the grandparent application did not use the word "about" in reference to the nickel content of the alloys described, the invention of claims 8–18 was not described therein and these claims could not be accorded the filing date of the grandparent application. Thus, while EP'361 did not contain a disclosure of claims 8–18, it did describe subject matter within the scope of the claims, and the claims were therefore held to be anticipated by EP'361. The interference resulted in a determination by the Board that Eiselstein was not entitled to a patent on any of his claims.

In its decision, the Board advised Eiselstein *et al.* that they could

> file an application for reissue of their patent for the *sole* purpose of claiming alloys containing "the balance essentially nickel in a weight proportion of 45% to 55% of said alloy." Eiselstein et al. are given two (2) months from the date of this decision in which to file their application for reissue.

Within the two-month period specified by the Board, but later than the one-month regulatory time limit for filing a Request for Reconsideration of a Board decision, *see* 37 C.F.R. § 1.658(b), Eiselstein filed a Request for Reconsideration to contest the § 102(b) rejection of claims 8–18. The request was dismissed as untimely in the absence of a showing of sufficient cause. *See* 37 C.F.R. § 1.645(b). Eiselstein's subsequent Request for Reconsideration and Petition to the Commissioner asking for relief from the dismissal of the Request was denied. Eiselstein now appeals pursuant to 35 U.S.C. § 141.[2] We have jurisdiction over the appeal under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

"A person shall be entitled to a patent unless[, *inter alia,*] the invention was ... described in a printed publication in ... a

---

1. Frank's claims 1–36 correspond to the count; Eiselstein's claims 1–19 correspond to the count.

2. On January 6, 1995, Eiselstein filed a reissue application and petition for suspension of action in the Patent and Trademark Office under 37 C.F.R. § 1.103.

foreign country ... more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). Whether patentability is barred by § 102(b) is a question of law to be determined based upon underlying factual determinations. *See United States Envtl. Products Inc. v. Westall*, 911 F.2d 713, 715, 15 USPQ2d 1898, 1900 (Fed.Cir.1990).

Eiselstein first argues that the Board erred in rejecting claims 1–19 under § 102(b), asserting that he was entitled to claim the benefit of the filing date of his grandparent application pursuant to § 120. Eiselstein also argues that the Board did not afford him procedural due process when it rejected claims 8–18 under § 102(b) for the first time in its final decision. In Eiselstein's view, the Board did not afford him an adequate opportunity to respond to the § 102(b) rejection because it did not explicitly set a time for him to respond and it effectively left him only the option of filing a reissue application, thereby causing him to impliedly admit the soundness of the rejection. Because we agree with Eiselstein that the Board's rejection of claims 8–18 was in error, we need not address Eiselstein's procedural argument and we turn directly to the merits.

■■■ The correctness of the Board's rejection of claims 1–19 under § 102(b) depends on whether or not Eiselstein's grandparent application satisfies the written description requirement of § 112, ¶ 1, for the subject matter of those claims. Compliance with the "written description" requirement is a question of fact, to be reviewed under the clearly erroneous standard. *Id.* If that requirement is met, claims 1–19 are entitled to the benefit of the grandparent's filing date

under § 120.[3] Since the Patent and Trademark Office relied only on EP'361 to invalidate the claims under § 102(b), entitlement to the filing date of the grandparent application would enable Eiselstein to antedate EP'361, thereby removing it as a reference against the claims.[4]

The first paragraph of § 112 reads as follows:

> The specification shall contain a *written description of the invention*, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112, ¶ 1 (emphasis added).

■■■ "Satisfaction of the description requirement insures that subject matter presented in the form of a claim subsequent to the filing date of the application was sufficiently disclosed at the time of filing so that the prima facie date of invention can fairly be held to be the filing date of the application." *Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1562, 19 USPQ2d 1111, 1115 (Fed.Cir.1991) (quoting *In re Smith*, 481 F.2d 910, 914, 178 USPQ 620, 623–24 (CCPA 1973)). In order to determine whether a prior application meets the "written description" requirement with respect to later-filed claims, the prior application need not describe the claimed subject matter in exactly the same terms as used in the claims; it must simply indicate to persons skilled in the art that as of the earlier date the applicant had invented what is now claimed. *Id.* at 1563, 19 USPQ2d at

---

3. Section 120 reads:

   **§ 120 Benefit of earlier filing date in the United States**

   An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States, or as provided by section 363 of this title, which is filed by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the

first application and if it contains or is amended to contain a specific reference to the earlier filed application.

4. In order for the Eiselstein application to be entitled under 35 U.S.C. § 120 to the filing date of an earlier application in the chain of applications of which it is a part, there must also have been a "continuing disclosure through the chain of applications, without hiatus." *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1266, 225 USPQ 697, 706 (Fed.Cir.1985) (citation omitted). Here, it is undisputed that the intervening parent application satisfies the written description requirement of § 112 as to the claimed subject matter.

1116; *see In re Wertheim*, 541 F.2d 257, 265, 191 USPQ 90, 98 (CCPA 1976) ("[L]ack of literal support ... is not enough ... to support a rejection under § 112."). The test is whether the disclosure of the application relied upon reasonably conveys to a person skilled in the art that the inventor had possession of the claimed subject matter at the time of the earlier filing date. *Ralston Purina Co. v. Far–Mar–Co, Inc.*, 772 F.2d 1570, 1575, 227 USPQ 177, 179 (Fed.Cir.1985). "Precisely how close the original description must come to comply with the description requirement of § 112 must be determined on a case-by-case basis." *Vas–Cath*, 935 F.2d at 1561, 19 USPQ2d at 1116.

The first question we must address is whether the Board clearly erred in determining that Eiselstein's grandparent application did not provide a written description of the nickel content of the nickel-based alloy set forth in claims 8–18, which recite various ranges of different elements, and "the balance nickel, *the nickel being from about 45% to about 55% of said alloy* [emphasis added]." The grandparent application described "An alloy containing *about* 15% to 22% chromium, 10% to 28% iron, 6% to 9% molybdenum, 2.5% to 5% columbium, 1% to 2% titanium, up to 1% aluminum, advantageously 0.05 to about 0.1% aluminum, *and balance essentially nickel in a weight proportion of 45% to 55% of the alloy* [emphasis added]." Although in that application, the word "about" does not immediately precede the nickel range limits, Eiselstein argues that, according to standard English usage, the word "about" used before the first term of a series of elements applies to all members of that series. Frank agrees with Eiselstein's position, and further points out that to require the use of "about" before every range would be both cumbersome and redundant.[5] Thus, we are presented with the situation of both parties, for their own reasons, urging that the Board clearly erred, while the Commissioner, as *amicus curiae*, supports the Board's finding. Although not for the reasons advanced by Eiselstein and Frank, we agree that the Board's decision was based on clear error.

As indicated earlier, the grandparent application need not contain precisely the same words as are found in claims 8–18, *see Ralston*, 772 F.2d at 1576, 227 USPQ at 180; rather, the application simply must indicate to a person skilled in the art that the range 45% to 55% was intended to be approximate, *i.e.*, to mean "about." We conclude that this was unmistakably the case.

The grandparent application describes an alloy comprised of a series of inexact ranges of elements with the balance of that composition described as "essentially nickel." "Essentially" is a vague term. The description also connotes a degree of approximation, or imprecision, in that the nickel comprises the "balance" of the composition, an amount that varies with the amounts of the other components. The amount of nickel is clearly not the critical aspect of the invention, but only the residual amount, depending upon the amounts of the more critical elements. Furthermore, the grandparent specification contains the following statement after the alloy's description: "Auxiliary elements, including malleablizers and deoxidizers, can be present in permissible small amounts ... and residual small amounts of [other substances] can remain [with] tolerable impurities possibly present." The specification further instructs that, for certain applications, the composition of the alloy can be more "specially restricted" or "closely controlled" for more consistent or advantageous results.

In "Table I" of the specification the chemical analyses of 3 sample alloys are set forth. Eiselstein lists the weight percent of each element in each alloy to one-hundredth of a percent. Such a description indicates that Eiselstein knew how to be precise when he intended to, and supports the conclusion that otherwise, when a whole number was stated, a precise amount was not intended. Thus, we are of the firm conviction that in his grandparent application, Eiselstein disclosed the invention of an alloy of various elements and the balance nickel, the nickel being an imprecise quantity, *i.e.*, from *about* 45% to *about* 55% of said alloy and, on the basis of that disclosure, one skilled in the art reading the grandparent application would readily

---

**5.** Eiselstein's and Frank's assertion that "about" applies to every quantity in the series is undercut by the fact that "about" appears not only before the series of elements, but also before the percentage of aluminum as one of the series of elements.

know that Eiselstein possessed that invention. Eiselstein need not be bound to maximum precision for the nickel content when the whole tenor of his disclosure indicates approximation. The Board clearly erred in finding otherwise.

█ We are not unresponsive to the Commissioner's argument that the word "about" in a later added claim can broaden an original disclosure that indicates to one skilled in the art that his or her invention is to a precise, not an approximate, amount, range, or limit. Under such circumstances, the term "about" in the later added claim is new matter and may not receive the benefit of an earlier filing date. The meaning of the word "about" is dependent on the facts of a case, the nature of the invention, and the knowledge imparted by the totality of the earlier disclosure to those skilled in the art. *See In re Wertheim,* 541 F.2d at 262, 191 USPQ at 96. We are also mindful that the word "about" may lead to indefiniteness under § 112, ¶ 2, *see Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.,* 927 F.2d 1200, 1218, 18 USPQ2d 1016, 1031 (Fed.Cir.), *cert. denied,* 502 U.S. 856, 112 S.Ct. 169, 116 L.Ed.2d 132 (1991), but that is not at issue here.

In this case, it was clear error to find that a person skilled in the art would not have considered the grandparent application to describe an approximate range of nickel. The later use of the term "about" to describe the range of nickel did not constitute a change to a distinct and different invention. Since the finding of the board concerning the disclosure of the grandparent application was clearly erroneous, the rejection of claims 8–18 based on that error was perforce erroneous as a matter of law.

█ The second question raised is whether the Board clearly erred in determining that Eiselstein's grandparent application did not provide a written description of the nickel content of the nickel-based alloy set forth in claims 1–7 and 19, which recite various ranges of different elements, "and the balance nickel with nickel constituting about 50 to about 60% of the alloy." We have carefully considered Eiselstein's assertions regarding this point. Since the grandparent application only disclosed a nickel range of 45–55%, it can hardly be said to have disclosed 50–60%. Whatever the term "about" means in this context, it is clear that it does not extend 55% to encompass 60%. Moreover, the 10% range of 45–55%, even if it is an approximate "about" 45–55%, is not the same as a very different 10% range, *viz.,* 50–60%. The limits of these ranges vary from each other by about 10%, which is comparable to the extent of the variation within each range. Eiselstein has therefore not persuaded us that the Board clearly erred in finding that the grandparent application did not provide an adequate written description of the invention comprising 50–60% nickel.

## CONCLUSION

The decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences is

*AFFIRMED–IN–PART and RE-VERSED–IN–PART.*