**INVERNESS MEDICAL SWITZER-LAND GmbH, Unipath Diagnostics, Inc., and Church & Dwight Co., Inc. Plaintiffs,**

v.

**ACON LABORATORIES, INC., Defendant.**

No. CIV.A. 03–11323 PBS.

United States District Court, D. Massachusetts.

April 29, 2005.

See also 323 F.Supp.2d 227.

Timothy C. Blank, Dechert LLP, Boston, MA, Baldassare Vinti, James H. Shalek, Proskauer Rose LLP, Boston, MA, John C. Stellabotte, Proskauer Rose LLP, New York, NY, for Armkel LLC, Defendant.

Peng Chen, Steven Emerson Comer, David Clarence Doyle, Brett D. Ekins, Brian M. Kramer, Mark A. Woodmansee, Morrison & Foerster, LLP, San Diego, CA, Joan M. Griffin, Daniel P. McCarthy, Michael P. Twohig, Perkins, Smith & Cohen, LLP, Boston, MA, Jose Luis Patino, Morrison & Foerster, LLP, San Diego, CA, for Acon Laboratories, In, Defendant.

J. Anthony Downs, Goodwin Procter, LLP, Boston, MA, for Medical Switzerland GmbH, Unipath Diagnostics, Inc., Church & Dwight, Inc., Plaintiffs.

Anastasia M. Fernands, Paul F. Ware, Goodwin Procter LLP, Boston, MA, for Inverness Medical Switzerland GmbH, Unipath Diagnostics, Inc., Plaintiffs.

Lana S. Shiferman, Goodwin Procter LLP, Boston, MA, for Inverness Medical Switzerland GmbH, Unipath Diagnostics, Inc., Plaintiffs.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### I. INTRODUCTION

Defendant Acon Laboratories, Inc. ("Acon") defends a patent infringement suit [1] by plaintiffs Inverness Medical Switzerland GmbH, Unipath Diagnostics, Inc., and Church & Dwight Co., Inc. ("Inverness") by claiming, *inter alia*, that claims 7 and 19 of U.S. Patent No. 6,485,982 ("the '982 patent") are invalid for failure to meet the written description requirement under 35 U.S.C. § 112, ¶ 1. Acon argues that because the '982 patent specification, which is also the specification in the original patent application, only describes a test device contained in a casing, the patent does not satisfy the written description requirement as to the '982 patent claims for a test device without a casing. Inverness moves for partial summary judgment on Acon's written description theory. After hearing and review of the briefs, Inverness's motion is **ALLOWED.**

### II. BACKGROUND

The following facts are undisputed. In June 1988, Edmund Pitcher, Esq., on behalf of David Charlton and Neil Miller, filed U.S. Patent Application No. 07/211,-582 ("the '582 application") at the United States Patent and Trademark Office (PTO) on an immunoassay test device. That application eventually led, through a series of continuation applications, to three patents: U.S. Patent No. 5,714,389 ("the '389 patent") issued February 3, 1998; U.S. Patent No. 5,989,921 ("the '921 patent") issued

---

1. See this Court's earlier opinion in *Inverness Medical Switzerland GmbH v. Acon Laboratories, Inc.*, 323 F.Supp.2d 227 (D.Mass.2004), allowing a motion for preliminary injunction. The Federal Circuit stayed the preliminary injunction on the ground that this Court had not reached the written description claim. On March 4, 2005, I clarified the record. (Docket No. 484). The order is pending on appeal.

November 23, 1999; and the patent at issue here, the '982 patent, issued November 26, 2002.

The specification in the original '582 application and the accompanying figures describe a test device enclosed in a type of housing or "casing." The claims in the '389 and '921 patents, which share the '582 patent specification, cover test devices enclosed in casings. Claims for a test device without a casing were first submitted to the PTO by Pitcher in May of 1997. The amendment that added these claims stated that the new claims were supported by the '582 application specification. (Shiferman Decl., Ex. B at C00154–56.)

The '982 patent, issued in 2002, claims a test device without a casing. The '982 patent abstract states that the invention "includes an elongate outer casing which houses an interior permeable material . . . ." Figures 1, 2 and 4A show the casing and the test strip, or the "sorbent material," as two components with different reference numbers. The description of figures 1 and 2 states that an embodiment of the invention "comprises an outer molded casing . . . filled with a permeable, sorbent material." '982 patent at col. 5, lines 33–35. As can be seen in the drawing below, figure 4A shows the test strip as a component separate from the casing (with casing at 10 and test strip at 12).

FIG. 4A

## III. DISCUSSION

### A. *Summary Judgment Standard*

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir.1995) (quoting Fed. R.Civ.P. 56(c)). "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" *Barbour*, 63 F.3d at 37 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Rogers*, 902 F.2d at 143 (quoting *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505) (citations in *Anderson* omitted). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that

party's favor." *Barbour*, 63 F.3d at 36 (citation omitted).

## B. *Written Description Doctrine*

■■■ Acon argues that the '982 patent fails the written description requirement of 35 U.S.C. § 112, ¶ 1, which provides:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same.

"The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not." *Amgen Inc. v. Hoechst Marion Roussel Inc.*, 314 F.3d 1313, 1330 (Fed.Cir.2003). The original patent specification must therefore " 'describe the claimed invention so that one skilled in the art can recognize what is claimed.' " *Koito Mfg. Co., Ltd. v. Turn Key Tech, LLC*, 381 F.3d 1142, 1154 (Fed.Cir.2004) (quoting *Enzo Biochem, Inc. v. Gen–Probe Inc.*, 323 F.3d 956, 968 (Fed.Cir.2002)). "In evaluating whether a patentee has fulfilled this requirement, our standard is that the patent's 'disclosure must allow one skilled in the art' to visualize or recognize the identity of the subject matter purportedly described." *Koito*, 381 F.3d at 1154 (citations omitted).

■■■ The written description requirement comes into play where, as here, "a claim is added by an applicant for a patent at some stage after the original filing date and the claim differs in scope from the original claims." Donald S. Chisum, *Chisum on Patents* § 7.04 (2003). The test under the written description requirement is whether the applicant " 'convey[ed] with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention.' "

*Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1320–21 (Fed.Cir.2003) (quoting *Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563–64 (Fed.Cir.1991) (emphasis omitted)). "[T]he applicant for a patent is ... required 'to recount his invention in such detail that his *future* claims can be determined to be encompassed within his *original* creation.' " *Moba*, 325 F.3d at 1319 (quoting *Amgen*, 314 F.3d. at. 1330). "[T]he written description is the metric against which a subsequently added claim is measured to determine if it is due the priority date of the original patent." *Moba*, 325 F.3d at 1319 (citation omitted).

■■■ Later claims need not be described literally in the specification to satisfy the written description requirement. *See Purdue Pharma L.P v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed.Cir.2000) ("In order to satisfy the written description requirement, the disclosure as originally filed does not have to provide *in haec verba* support for the claimed subject matter at issue.").

■■■ "A patent is presumed to be valid, and this presumption can be overcome only by facts supported by clear and convincing evidence to the contrary." *Enzo*, 323 F.3d at 962 (citations omitted). "Whether a specification complies with the written description requirement of 35 U.S.C. § 112, § 1 is a question of fact." *Koito*, 381 F.3d at 1149.

## C. *Expert Testimony*

Inverness claims the 1988 filing date of the '582 application for the '982 patent. Therefore, the '582 application specification (which is also the '982 patent specification) must satisfy the written description requirement as to the claims in the '982 patent. Acon concedes that the laboratory notebooks of Carter–Wallace indicate that David Charlton probably knew that a test device without a casing would work when he invented the device in the 1980's.

(Acon's Opp. at 11). However, the critical question is whether the patent specification indicates to a person skilled in the art that as of June 1988, Charlton actually had possession of a test device without a casing, in light of the fact that the only test device described in that specification had a casing. *See Moba*, 325 F.3d at 1320–21. There appears to be no "battle of the experts" as to the facts related to this central issue.

### 1. *Dr. David Katz, Dr. Michael Prior, and Dr. Gene Davis*

Two expert witnesses for Inverness, Dr. David Katz and Dr. Michael Prior, both state that a person of skill in the art would know from the '982 patent specification that the casing was not necessary to the functioning of the test device. (Fernands Decl., Ex. C, Katz Decl. § 7 ("A working immunoassay test device that includes a casing necessarily includes a functioning test strip within the casing. A person of skill in the art would recognize that, while the casing may provide certain advantages, it is not necessary for the test to function."); Fernands Decl., Ex. D, Prior Aff. § 8 ("Based on my experience, one of ordinary skill in the art reading the specification would clearly understand that one can run the test without a casing and by using only the test strip.").)

Dr. Gene Davis, a third expert witness for Inverness, concedes that the '982 patent specification "clearly describes a casing," and that he does not "see any place in the specification that teaches a test strip without a housing or casing." However, Dr. Davis also agrees with Drs. Katz and Prior that the casing is not necessary for the device to function. He states: "I don't think [the casing is] incorporated into the claims because I don't think that that's essential to the performance of the product." (Kramer Aff., Ex. 4, Davis Dep. 197:5–12; 198:1–5.)

### 2. *Dr. Gary David*

In his deposition, Dr. David, an expert witness for Acon, agreed with the Inverness experts that a person of skill in the art would understand from the '982 patent specification that the test device could run without a casing:

Q: ... I'm just asking you're a person of skill in the art reading the '982 specification, you would understand from that specification that you could perform a test using a test strip without a casing; isn't that correct?

A: I would understand that you could perform a test without using a casing.

(Fernands Decl. Ex. E, David Dep. 203:4—203:10.) Thus, the testimony of Dr. David, like that of the Inverness experts, suggests that a person skilled in the art would understand from the specification that Dr. Charlton had possession of a test device that could operate without a casing in 1988, despite the specification description of a test device with a casing.

Dr. David also states, however, that "the '982 patent fails to provide adequate description for any test devices without a casing." (Fernands Decl., Ex. F, David Report § 158.) He provides three reasons for this conclusion: (1) that "the '982 specification and the original filed claims in the parent application ... only describe and claim test strip contained in a casing, or use thereof"; (2) that "the casing or housing is a critical feature of the test device claimed in the '982 patent"; and (3) that the casing "was crucial for the patentability of the claims in the '982 patent." (*Id.* §§ 161, 181.)

Inverness does not seriously dispute Dr. David's first point, that the '982 patent describes only a test device with a casing. There is no figure, diagram, or written description of a test device without a casing in the specification. *See Koito*, 381 F.3d at 1154. However, absence of such

an express description is not decisive as to the written description issue; the question is not whether the '982 specification expressly described a test device operable without a casing, but whether a skilled person in the art would understand from the specification or application that the applicant had invented a test device without a casing. *See All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779 (Fed.Cir.2002) ("In order to comply with the written description requirement, the specification 'need not describe the claimed subject matter in exactly the same terms as used in the claims; it must simply indicate to persons skilled in the art that as of the [filing] date the applicant had invented what is now claimed.'") (quoting *Eiselstein v. Frank*, 52 F.3d 1035, 1038 (Fed.Cir.1995) (citations in *Eiselstein* omitted)).

In support of his second finding, that the casing is a critical feature of the '982 patent test device, Dr. David points to several statements made by agents of the '982 applicant and others during interference proceedings and patent prosecution (none of which describe the casing as required for the operation of the test strip). (Fernands Decl. Ex. F, David Report §§ 183–188.) These individuals stated, for example, that the casing permits controlled access to the strip and proper placement of the sample, protects the strip and reagents from contamination, protects the user from soiling, and provides for easy handling. (*Id.*) Dr. David concludes that "it is clear ... that the '982 applicant viewed the housing element as a critical element of its test device." (*Id.* at § 189.)

In *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed.Cir.1998), which involved a patent on a sectional sofa with recliner controls, the original patent disclosure identified the console of the sofa as the location for the controls, while the later-drafted claims did not require the controls to be on the console. *Id.* at 1478. The Federal Circuit found that the written description requirement was not satisfied, stating ("[i]t is clear that [the inventor] considered the location of the recliner controls on the console to be an essential element of his invention. Accordingly, his original disclosure serves to limit the permissible breadth of his later-drafted claims.") *Id.* at 1479. Based on *Gentry*, Acon suggests that because Charlton considered the casing an important element of the test device, claims lacking that limitation fail the written description test.

In post-*Gentry* cases, the Federal Circuit eschewed any "essential element" written description test. *See Cooper Cameron Corp. v. Kvaerner Oilfield Prods.*, 291 F.3d 1317, 1323 (Fed.Cir.2002) ("[In *Gentry Gallery* ], we did not announce a new 'essential element' test mandating an inquiry into what an inventor considers to be essential to his invention and requiring that the claims incorporate those elements."). Rejecting the argument that *Gentry* was a watershed case and construing the "essential element" language as an "isolated statement ... probably only dicta," the court has described the *Gentry Gallery* holding as "an application of the settled principle that a broadly drafted claim must be fully supported by the written description and drawings." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1333 (Fed.Cir.2003); *see also Inverness Med. Switz. GmbH v. Acon Labs., Inc.*, 323 F.Supp.2d 227, 250 (D.Mass.2004). Nonetheless, while its wings have been clipped,[2] *Gentry* has some

---

2. Research of post-*Gentry* Federal Circuit caselaw disclosed only one published case that relied on the written description reasoning in *Gentry* to invalidate a claim for failure to meet the written description requirement. *See PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1247–48 (Fed.Cir.2002).

continuing vitality, particularly for later-filed claims. *See PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1247–48 (Fed. Cir.2002) (holding that a later-added claim encompassing a sequential application of chemicals to treat tubers was invalid under *Gentry* because the specification described application of the chemicals in a mixture). It is clear, however, that while the importance to the inventor of a feature described in the application specification may be relevant to the written description inquiry, it is not dispositive.

Dr. David's third finding is that the casing was important for the patentability of the claims in the '982 patent. He notes that during prosecution of the '389 and '982 patents and the interference proceeding, the patent applicant used the casing element to distinguish prior art, and to avoid double patenting problems. (Fernands Decl., Ex. F, David Report §§ 191–193.) Acon argues that Inverness is therefore estopped from seeking a broader claim scope. While a disavowal of claim scope in the prosecution history may limit claim construction, *see, e.g., Microsoft Corp. v. Multi–Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed.Cir.2004), Acon is making a written description claim here. Under a written description challenge, the central focus must be on the patent specification itself, and whether it conveyed possession of the invention to a person of skill in the art. *See University Of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 927 (Fed. Cir.2004) ("[I]t is in the patent specification where the written description requirement must be met."). In this context, the statements in the prosecution history do not bolster Acon's claim.

### 3. Dr. Wall

Like Dr. David, Dr. Wall, also an Acon expert, states his legal opinion that "all claims ... of the '982 patent are invalid because the patent fails to provide any description for any test devices without a casing." (Wall Aff. Ex. A, Wall Report ¶ 3.) He states that "the '982 specification only describes test strips contained in a casing, or use of test strips in a casing," and that Dr. Charlton "acknowledged that the casing was a 'critical feature' for proper operation of the test device claimed in the patent and argued that the presence of the casing distinguished the claims of the '982 patent from prior art." (*Id.* at ¶¶ 4,6.) These findings are essentially identical to those of Dr. David and for the reasons described above, do not resolve the written description conflict in this case.

In his deposition, Dr. Wall was asked about the understanding of a person of ordinary skill in the art in 1988.

Q: So it would have been well understood by the person of ordinary skill in the art as of June 1988 that you could take a strip of porous material and use it to run a lateral-flow test without a casing; isn't that right?

A: That's true.

.    .    .    .    .

Q: In the prior art, as of June 1988, the person of ordinary skill in the art would understand that you could run a test on a porous material test strip without the use of a casing; is that right?

A: All of those statements are generally true, yes, although I should say that's not what is disclosed in the '982 patent.

(Wall Dep., 42:3–8; 42: 13–19.) This testimony provides no support for a view contradicting that of the other experts, that a person of skill in the art would understand, looking at the '982 specification in 1988, that the test device could be run without a casing.

In sum, the undisputed expert evidence indicates that a person of ordinary skill in the art reading the specification in 1988 would believe that the patent applicant

possessed and had invented a test device that was operable without a casing.

### D. *Broadening of Claims*

 Inverness notes that the patent application disclosed all of the limitations in the claim (i.e., the sorbent material, a test site, a first and second binder, etc.). *See Purdue,* 230 F.3d at 1323 ("[O]ne skilled in the art, reading the original disclosure, must immediately discern the limitation at issue in the claims"). Based on *Gentry Gallery,* Acon argues that the disclosure of all the claim's limitations is not dispositive because the amendment at issue is a broadening amendment that deletes a significant, albeit nonessential, claim limitation. Both sides make good points, and the caselaw on broadening amendments is sparse. As the Federal Circuit has made clear, however, *Gentry Gallery* did nothing to modify the traditional written description test, but simply stated that "a broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a much narrower scope." *Cooper Cameron,* 291 F.3d at 1323.

Thus, the touchstone of written description remains the possession test. If a person of ordinary skill in the art would understand from the '982 specification that Charlton had possession of a test device without a casing in 1988, the written description requirement is satisfied, regardless of the fact that the specification describes a device with a casing. *See Moba,* 325 F.3d at 1320–21. Here, based on the fact that all of the claim limitations were described in the patent specification, and the fact that the experts agree that a person skilled in the art would understand from the specification that the casing was not necessary for the test device to operate, the possession test has been met. A person of ordinary skill in the art would understand that the patentee had possession of the inner test device on its own, in addition to the test device in combination with its casing.

As there is no genuine issue of material fact on this point, this Court's analysis need go no further, and Inverness's motion for partial summary judgment must be granted.

### ORDER

Plaintiffs' motion for partial summary judgment on Acon's written description theory (Docket No. 416) is *ALLOWED.*