Citation Nr: 1528212 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 09-46 826 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for residuals of a right ankle sprain.

2. Entitlement to service connection for a heart condition.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

J.C. Chapman



INTRODUCTION

The Veteran served on active duty from May 1959 to May 1962.

He appealed to the Board of Veterans' Appeals (Board/BVA) from a May 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) that denied his petition to reopen his previously-denied claim of entitlement to service connection for residuals of a right ankle sprain and denied his claim for service connection for a heart condition.

In September 2014 the Veteran withdrew his request to testify at a hearing at the Board's offices in Washington, DC (Central Office (CO) hearing). See 38 C.F.R. § 20.702(d) (2014). The hearing was to occur in October 2014. 

Later in October 2014, the Board reopened his claim for residuals of a right ankle sprain because there was the required new and material evidence since the last, final and binding, decision denying this claim. But rather than immediately readjudicating this claim on its underlying merits, the Board instead remanded this claim, also the claim for a heart condition, to the Agency of Original Jurisdiction (AOJ) for further development and consideration. That development since has been completed, the claims again denied, so they are again before the Board.

The Board has advanced these claims on the docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

Neither a right ankle disability nor heart disability manifested in service or for many years thereafter or is shown to be related or attributable to the Veteran's service.



CONCLUSION OF LAW

Right ankle and heart disabilities were not incurred in or aggravated by his service and may not be presumed to have been. 38 U.S.C.A. §§ 1101, 1112, 1113, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309 (2014). 


REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

The requirements of 38 U.S.C.A. §§ 5103 and 5103A (West 2002 & Supp. 2013) have been met. By correspondence dated in October 2007, VA notified the Veteran of the information needed to substantiate and complete his claims, including apprising him of the information and evidence he was responsible for providing and of the information and evidence VA would attempt to obtain for him, so on his behalf, as well as how VA assigns "downstream" disability ratings and effective dates. He has had ample opportunity to respond/supplement the record and has not alleged that notice was insufficient.

Regarding VA's additional obligation to assist him with these claims, the Veteran's service treatment records (STRs) and pertinent post-service treatment records have been obtained and considered. The RO also arranged for VA compensation examinations in March 2008 and March 2015. The reports of these examinations and consequent opinions, taken together, are adequate to decide these claims, including in terms of discussing the etiologies of these claimed conditions in relation to their posited correlation with the Veteran's time in service. See Barr v. Nicholson, 21 Vet. App. 303 (2007). He has not identified any pertinent evidence that is outstanding and obtainable. VA's duty to assist is met. 


Legal Criteria

Service connection is granted for disability due to disease or injury incurred in or aggravated by active military service in the line of duty. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease initially diagnosed after discharge, when the evidence, including that pertinent to service, establishes the disability was incurred in service. 38 C.F.R. § 3.303(d). 

To substantiate a claim of service connection, there must be evidence confirming the Veteran currently has the claimed disability (or, at the very least, showing he has at some point since the filing of his claim for the disability); evidence of incurrence or aggravation of a relevant disease or an injury in service; and evidence of a nexus between the disease or injury in service and the current disability. See Shedden v. Principi, 381 F.3d 1153, 1166-1167 (Fed. Cir. 2004). The determination as to whether these requirements are met is based on an analysis of all the evidence of record and the evaluation of its competency and credibility to determine its ultimate probative value. Baldwin v. West, 13 Vet. App. 1 (1999).

Certain chronic diseases (including arthritis and cardiovascular disease) may be service connected on a presumptive basis if manifested to a compensable degree, meaning to at least 10-percent disabling, within a specified period of time (one year for arthritis and cardiovascular disease) following discharge from service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a).

Additionally, under 38 C.F.R. § 3.303(b), with an enumerated "chronic disease" shown in service (or within the presumptive period under § 3.307), subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to other ("intercurrent") causes. See Groves v. Peake, 524 F.3d 1306, 1309 (2008). This rule does not mean that any manifestation of chronic disease in service will permit service connection of that disease first shown as a clear cut clinical entity, at some later date. For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "chronic." When the disease identity is established, there is no requirement of evidentiary showing of continuity of symptomatology. 38 C.F.R. § 3.303(b).

38 C.F.R. § 3.303(b) also provides another route by which a Veteran can establish service connection for an enumerated chronic disease - by way of continuity of symptomatology. Continuity of symptomatology after discharge is required only where the condition noted during service (or in the presumptive period) is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned, i.e., "when the fact of chronicity in service is not adequately supported." When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support a claim for disability compensation for the chronic disease. Proven continuity of symptomatology establishes the link, or nexus, between the current disease and service and serves as the evidentiary tool to confirm the existence of the chronic disease while in service or a presumptive period during which existence in service is presumed. 38 C.F.R. § 3.303(b). See also Walker v. Shinseki, 708 F.3d 1331, 1338-39 (Fed. Cir. 2013).

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of a matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).
 
The Board has reviewed all of the evidence in the record. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss in detail every piece of evidence of record. See Gonzales v. West, 218 F. 3d 1378, 1380-81 (Fed. Cir. 2009). Hence, the Board will summarize the relevant evidence as appropriate, and the Board's analysis will focus specifically on what the evidence shows or fails to show as to the claims. 

Residuals of a Right Ankle Sprain

The Veteran contends that he has a right ankle disability due to his service. Specifically, he contends that he injured this ankle in a fall during basic training and that he has had consequent problems with it ever since. See November 2007 and December 2009 statements.

The Veteran's STRs show that, in December 1961, he fell down stairs and twisted his right ankle. An X-ray was negative for a fracture. In January and April 1962, he was shown to have sprained his right ankle. On March 1962 report of medical history, he reported swollen or painful joints; however, an examiner noted that the Veteran had sprained and swollen ankles in service, but that it had healed with conservative treatment. Notably, on March 1962 service separation examination, his feet and lower extremities were normal on clinical evaluation. His military service ended in May 1962.

There is no suggestion of chronic or recurring issues referable to the Veteran's right ankle at any time during the next several years, indeed decades.

A May 1995 private treatment record notes the Veteran had a broken right ankle in March 1986, so owing to an intervening event. In September 2007 he reported chronic right ankle pain, but instead due to the injury during basic training.

On March 2008 VA joints examination, degenerative joint disease (i.e., arthritis) of the ankles was diagnosed. The examiner opined, however, that the arthritis in this ankle was unrelated to the Veteran's service, so including the injury cited as the source or cause of it. When discussing the underlying basis or rationale for his opinion, the examiner observed the Veteran was not diagnosed with any chronic or recurrent joint problem in the service and that his separation examination showed normal feet and lower extremities. Further, the examiner noted that X-rays from December 1961 were negative for right ankle findings. Therefore, the examiner concluded that any injury that occurred on active duty was acute and fully resolved. 

The examiner also explained that the Veteran's advanced age of 69 years and his excessive weight of 110 pounds above his discharge weight of 170 pounds are the more likely contributing factors of his degenerative joint disease. 

On March 2015 VA ankle conditions examination, osteoarthritis of the ankle was again diagnosed (right ankle since 2008). The Veteran reported having degenerative joint disease of the ankles since 2008, which he said causes daily pain. The examiner found that the osteoarthritis was less likely than not incurred in or caused by the Veteran's service. The examiner observed the Veteran was found to have had mild degenerative joint disease of the ankles in 2008. Also, no ankle condition or degenerative joint disease was found in the first year after service, and the Veteran has been obese for many years and was 69 years old in 2008. Thus, the examiner concluded that the causes of the Veteran's ankle degenerative joint disease are age and obesity. The examiner surmised that, if the cause was the old ankle sprain in service, then degenerative joint disease would have only been found in the injured ankle and not in both ankles, both knees, and both hips. The examiner found that this more widespread pattern indicated age and obesity as the causes of the widespread degenerative joint disease.

There resultantly is no disputing the Veteran has arthritis in his right ankle, given the confirmed diagnosis of degenerative joint disease (albeit affecting several other joints, as well). In any event, there is no indication he had arthritis in this ankle at any time during his service or even within the initial year after conclusion of his service, including to a compensable degree, so during the presumptive period. Arthritis must be objectively confirmed by X-ray. 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5003. It therefore is not the type of condition subject, instead, to confirmation by mere lay testimony alone. Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). Although he had several right ankle sprains in service, on separation from service report of medical history, an examiner noted that those sprains since had healed, therefore did not have consequent residuals. 

Significantly, on separation examination, the Veteran's feet and lower extremities were described as normal on clinical evaluation. Thus, even accepting or conceding right ankle trauma in service, in the way of those sprains, this alone is not tantamount to concluding they resulted in chronic (i.e., permanent) disability. This is so based on the opinions of the March 2008 and March 2015 VA examiners who determined there is no objective evidence of chronic right ankle pathology after the Veteran's ankle sprains in service. The March 2015 examiner acutely pointed out that, if the cause of the current disability was the old ankle sprain then degenerative joint disease would only have been found in the injured ankle and not also in both ankles, both knees, and both hips. So, according to this examiner, this pattern of widespread degenerative joint disease indicated age and obesity as more likely causes. Hence, service connection for a right ankle disability on the basis that it first manifested in service (or even in the first post-service year) and has persisted ever since is not warranted. 

The preponderance of the evidence is also against finding that service connection for arthritis, as a chronic disability under 38 C.F.R. § 3.309(a), is warranted on a presumptive basis. The record does not show that arthritis manifested within the first post-service year. As noted by the March 2015 VA compensation examiner, degenerative joint disease was not found until 2008, over 40 years after the Veteran's discharge from service. Therefore, presumptive service connection for arthritis as a chronic disease is not warranted. 38 C.F.R. §§ 3.307, 3.309(a).

The Board additionally has considered whether service connection is warranted based on continuity of symptomatology since service, but finds that it, too, is not. See 38 C.F.R. § 3.303(b). Despite the Veteran's contentions, as arthritis was affirmatively not found until 2008, over 40 years after his discharge from service, the preponderance of the evidence does not support the existence of the chronic disease while in service or the presumptive period. Further, his post-service treatment records indicate treatment for obesity and weight gain since service, suggesting a possible post-service etiology for his ankle complaints. And, to reiterate, since a layman he is unable to say when he first had arthritis since it must be objectively confirmed by X-ray. 38 C.F.R. § 4.71a, DC 5003. For these reasons and bases, the preponderance of the evidence is against a finding of continuity of symptomatology since service.

What remains for consideration is whether the Veteran's current right ankle disability may somehow otherwise be related to his service. 38 C.F.R. § 3.303(d). In this regard, the most probative and persuasive evidence of record shows that his right ankle disability is unrelated to his service. On March 2008 VA examination, the examiner, citing to the factual record including the Veteran's service separation examination that showed normal feet and lower extremities, found that any right ankle injury in service was acute and transitory and fully resolved, and that the more likely contributing factors to the degenerative joint disease (arthritis) now affecting the Veteran's right ankle are his advanced age of 69 years and his excessive weight of 110 pounds above his discharge weight of 170 pounds. Similarly, the March 2015 VA examiner noted that the Veteran was found to have degenerative joint disease of the ankles in 2008, when he was 69 years old and obese. The examiner indicated there was no objective evidence of chronic ankle pathology and that, instead, age and obesity seemed to be the more likely causes. The examiner further surmised that, if the cause of the Veteran's current right ankle disability was his old ankle sprain in service, then degenerative joint disease would have only been found in the injured ankle and not throughout his joints (including both ankles, knees, and hips). Because the examiners expressed familiarity with the record and cited to supporting factual data, the opinions are both probative and persuasive evidence in this matter. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 299-301 (2008); see also, Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007). Notably, there is no competent evidence to the contrary.

The only other evidence in the record concerning the etiology of the Veteran's right ankle disability is his own statements. Lay persons are competent to provide opinions on some medical issues. Kahana v. Shinseki, 24 Vet. App. 428 (2011). However, the disability at issue in this case could have multiple possible causes and whether or not a chronic right ankle disability may be related to his service (which ended more than 50 years earlier) is a medical question that requires medical expertise. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). 

The Veteran is a layman and has not presented any competent (medical opinion/textual) evidence in support of his allegation that his current right ankle degenerative joint disease is related to his service. 

Accordingly, the Board finds that the preponderance of the evidence is against this claim for service connection for a right ankle disability. Therefore, the benefit of the doubt rule does not apply and the appeal of this claim must be denied.

Heart Condition

The Veteran also attributes his heart condition to his service. In his August 2007 claim, he cited the onset of this condition as in April 2006, but believes that it, too, stems from his service years earlier.

The Veteran's STRs show that, in June 1959, he complained of chest pain. A subsequent February 1962 record indicates his heart was normal, however. Similarly, on March 1962 service separation examination, his heart again was normal on clinical evaluation. And, to reiterate, his military service ended in May 1962.

A June 1995 record notes that the Veteran reported tightness in his chest. A February 1998 record notes a family history of coronary artery disease (CAD). A February 1998 chest radiology report indicates an unremarkable heart.

An April 2005 private treatment record notes the Veteran was admitted to the hospital and found to have atrial fibrillation with rapid ventricular response. The impression was "atrial fibrillation - indeterminate age with adequate ventricular rate 100 controlled measures and anticoagulation." In May 2005, it was noted that he was found to have atrial fibrillation that was apparently new, at least for the past 6 months prior to the then present hospitalization.

An April 2007 VA treatment record indicates an assessment of atrial fibrillation, rate controlled. A December 2009 treatment record notes assessments of CAD and atrial fibrillation.

On March 2015 VA artery and vein conditions examination, the examiner noted that the Veteran was diagnosed with hypertension since 1986 and atrial fibrillation since April 2005. The examiner opined that the Veteran's atrial fibrillation is a result of his long-standing hypertension. The examiner stated that the Veteran did not develop any heart condition during his military service or within the first year after service (referring to the presumptive period). The examiner noted that the Veteran has a family history of heart disease (including his father and mother). The examiner thus concluded that the Veteran's heart condition is the result of his family history and long-standing hypertension. In support of this opinion, the examiner cited a review of the record, including the Veteran's lay statements and verbal history.

Just as in the case of his right ankle arthritis, there is no disputing the Veteran has a heart condition (indeed, at least two, CAD and atrial fibrillation since both have been diagnosed throughout the pendency of this appeal). But with regards to the CAD, the Board sees that a December 2009 record indicates an assessment of such, however, does not otherwise indicate a diagnosis or treatment for this condition, only instead continued treatment for atrial fibrillation. Notably, on March 2015 VA examination to evaluate the arteries, the examiner did not diagnose CAD. Regardless, a heart condition was not manifested in service (none of any sort). On service separation examination, the Veteran's heart was normal on clinical evaluation. Moreover, on March 2015 VA examination, the examiner found, after a review of the evidence including the Veteran's lay statements, that there was no evidence of a chronic heart condition that manifested during service or within the first post-service year (i.e., presumptive period). Further, significantly, the Veteran himself reported onset of a heart condition in April 2006, over 40 years after his discharge from service. Hence, service connection for a heart condition on the basis that it initially manifested in service (or in the first post-service year) and has persisted is not warranted. 


The preponderance of the evidence is also against finding that service connection for cardiovascular disease, as a chronic disability under 38 C.F.R. § 3.309(a), is warranted on a presumptive basis. The record does not show, and the Veteran does not contend, that cardiovascular disease manifested within the first post-service year. Indeed, he reported on his claim seeking compensation that onset of a heart condition was in April 2006, many years after his discharge from service. Therefore, presumptive service connection for cardiovascular disease as a chronic disease is not warranted. 38 C.F.R. §§ 3.307, 3.309(a).

The Board also has considered whether service connection is warranted based on continuity of symptomatology since service, but finds that it, too, is not. See 38 C.F.R. § 3.303(b). Significantly, as noted above, the Veteran himself has admitted that onset of heart condition was many years after his service. Further, on service separation examination, his heart was normal on clinical evaluation. Thus, the preponderance of the evidence is against a finding of continuity of symptomatology since service.

What remains for consideration is whether the Veteran's heart condition may somehow otherwise be related or attributable to his service. 38 C.F.R. § 3.303(d). In this regard, the most probative and persuasive evidence of record shows that his atrial fibrillation is unrelated to his service. On March 2015 VA examination, the examiner opined that the Veteran's atrial fibrillation is a result of his long-standing hypertension (which has been found to not be related to his service) and that there is no evidence to support or suggest that he developed a heart condition during his service or within the first post-service year. The examiner pointed out the Veteran also has a family history of heart disease (maternal and paternal), which could be a cause for his atrial fibrillation, especially when combined with his history of hypertension. Because the examiner expressed familiarity with the record, including a review of the Veteran's lay statements and reported history, and cited to supporting factual data, his opinion is both probative and persuasive evidence in this matter. See Nieves-Rodriguez, 22 Vet. App. at 299-301; see also, Stefl, 21 Vet. App. at 124. Notably, there is no competent evidence to the contrary.

The Board has considered the Veteran's lay statements concerning the etiology of his heart condition and, notably, that such is related to his service. Lay persons are competent to provide opinions on some medical issues. Kahana, 24 Vet. App. at 428. However, the disability at issue in this case could have multiple possible causes and whether a chronic heart condition such as atrial fibrillation may be related to his service (which ended more than 50 years earlier) is a medical question that requires medical expertise. See Jandreau, 492 F.3d at 1376-77. The Veteran is a layperson and has not presented any competent (medical opinion/textual) evidence in support of his allegation that his current atrial fibrillation is related to his service. 

With regards to the assessment of CAD also noted in the record, an examination or medical opinion was not obtained. However, absent any competent (medical) evidence suggesting the Veteran's CAD is related to his service, an examination to obtain a medical nexus opinion in this matter is unnecessary, as even the low threshold standard as to when an examination or opinion is necessary endorsed by the U.S. Court of Appeals for Veterans Claims in McLendon v. Nicholson, 20 Vet. App. 27 (2006), is not met. See also 38 U.S.C.A. § 5103A(d)(2); 38 C.F.R. § 3.159(c)(4). The only evidence in the record concerning the etiology of the Veteran's heart condition is the Veteran's own statements generally alleging that he has a heart condition related to his service. And, as explained, while lay persons are competent to provide opinions on some medical issues, determining the etiology of a cardiovascular condition is a medical question that requires medical expertise. See Jandreau, 492 F.3d at 1376-77. His unsupported lay opinion in this instance is not competent evidence.

Accordingly, the Board finds that the preponderance of the evidence is against the claim for service connection for a heart condition. Therefore, the benefit of the doubt rule does not apply and the appeal of this claim must be denied.



ORDER

The claim of entitlement to service connection for residuals of a right ankle sprain is denied.

The claim of entitlement to service connection for a heart condition also is denied.



____________________________________________
Keith W. Allen
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs